IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VITTORIO GUERRIERO, M.D., and <br> GREGORY C. NACOPOULOS, D.O., <br> <br> Plaintiffs, <br> <br> vs. <br> <br> MERIT LINCOLN PARK, LLC, GREGORY A. <br> CIERLIK, WILLIAM S. MARKEY, M.D., <br> MARIA M. MUNOZ, M.D., CHRISTOS A. <br> GALANOPOULOS, M.D., GEORGE I. <br> SALTI, M.D., GEORGE ENGEL, M.D., <br> HOWARD A. MORITZ, M.D., CHRISTINE <br> BRADY, R.N., ERHARD R. CHORLÉ and <br> LYNN A. ELLENBERGER, <br> <br> Defendants. | No. 08 C 2388 <br> <br> Judge Leinenweber |

## **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants, Erhard R. Chorlé and Lynn A. Ellenberger, by their attorneys, Kevin M. Forde, Ltd., respectfully submit their reply memorandum in support of their motion to dismiss the Complaint.

## **INTRODUCTION**

Defendants Chorlé and Ellenberger acted as attorneys for Merit Lincoln Park, LLC, d/b/a/ Lincoln Park Hospital ("LPH") in peer review proceedings concerning plaintiff Guerriero's status as a physician with certain privileges at the hospital, and in a subsequent Illinois state court action regarding those proceedings. Each of the nine claims in plaintiffs' complaint concerns Chorlé's and Ellenberger's conduct as attorneys throughout those proceedings. In their opening memorandum ("Memo."), Chorlé and Ellenberger set forth numerous reasons why the Complaint should be dismissed in its entirety. Plaintiffs' combined response to all defendants' memoranda is long on simple reiteration of the Complaint's allegations and short on substantive responses to defendants' arguments.

Plaintiff Guerriero, who was represented by counsel throughout the prior proceedings, could have brought the myriad of claims in his present Complaint in the prior state court action

1

(which he initiated) but did not. The principles of *res judicata* preclude him from bringing those claims now. Plaintiffs offer no credible argument that it would be unfair to bar the Complaint's claims on these grounds.

Alternatively, Chorlé and Ellenberger's status as attorneys in professional peer review proceedings and in state court proceedings affords them the benefit of various federal and state privileges and immunities. Plaintiffs' response does not defeat their application here.

While dismissal on both *res judicata* and immunity grounds is proper, the Complaint fails to properly state any claim. Dismissal is warranted on these alternative grounds, should this Court need to reach them. Simply repeating the Complaint's deficient allegations does not sustain the claims of either Guerriero or his partner, Nacopoulos.

## ARGUMENT

**I.     Plaintiffs' Claims Are Barred By *Res Judicata*.**

   *A.     The Requirements of Res Judicata Are Met.*

In their opening memorandum, defendants demonstrated that *res judicata* bars the current Complaint. (*See* Memo., pp. 5-8).

In response, Plaintiffs first argue that Nacopoulos was *not* in privity with Guerriero, and thus Nacopoulos' claim (Count IX) is not barred. (Resp., p. 4). Yet, the Complaint clearly alleges Nacopoulus and Guerriero were partners. (Complt., ¶ 1). As partners, who adequately represent the same legal interests, they are in privity with one another, and both their claims are barred. Alternatively, Nacopoulos' claim in Count IX is woefully deficient and should be dismissed. (*See infra*, p. 14).

Plaintiffs next respond that the Individual Defendants are not in privity with LPH (the defendant in the state court case) since they were acting "for selfish motives, not as agents of [LPH]." (Resp., p. 4). This "response" fails to address the authorities cited that establish that, for purposes of *res judicata*, attorneys are considered to be in privity with their client. (*See* Memo., p. 7). Plaintiffs thus concede the point.[1]

Plaintiffs next argue that there is no identity of the causes of action in this action and the previous Chancery action. (Resp., p. 4). This argument, however fails to acknowledge Illinois' transactional test, whereby "separate claims will be considered the same cause of action for

---

[1] As privities of LPH, Guerriero's release of all claims against LPH applies to Chorlé and Ellenberger. (*See* LPH Defs.' Memo. pp. 6-7, 13; LPH Defs.' Reply, pp. 4-5).

2

purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *See River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 307 (1998). Here, the claims in the state court case and in the present Complaint all arise from the same set of facts: Guerriero's suspension from and the termination of his privileges at LPH. Plaintiffs do not cite any claim that could not have been made in the previous case.

Plaintiffs do not address, and thus concede, that there was a final judgment on the merits in the state court case.[2]

### B.   Plaintiff Had A Full and Fair Opportunity to Litigate.

Plaintiffs claim application of *res judicata* in this case would be fundamentally unfair because "[Guerriero] failed to assert his damages claims against [defendants]" in the prior state court case, which was filed "shortly after the fraudulent NPDB filing was made." (Resp., p. 5). But this is precisely the point of *res judicata*, which bars all claims that *could have* been asserted in the prior litigation – whether they were or not. Guerriero admits he knew the NPDB report was "fraudulent" yet did not raise this claim – or any other claim based on the defendants' alleged misconduct – when he filed the state court case or any time during the pendency of that case.

*Best Coin-Op v. Paul F. Ilg Supply Co.*, 189 Ill. App. 3d 638 (1st Dist. 1989), cited by Plaintiffs, is distinguishable. In *Best Coin-Op*, the court held that *res judicata* did not serve as a bar to the subsequent lawsuit because the defendant in the second case "was in no sense connected with or an agent of [the defendant in the prior case] at the time of the breach, but rather was an unrelated business entity…." *Id.* at 656-57. In this case, Chorlé and Ellenberger were the agents of LPH and were acting in their capacity as agents of LPH during the entire factual scenario complained of by Guerriero.

Plaintiffs further argue that application of *res judicata* would be unfair "since the misconduct continued after Judge Bush's final order in the Chancery Case." (Resp., p. 6). This

---

[2] Plaintiffs contend that the Complaint is not a relitigation of the state court claims for purposes of *res judicata*, citing *Torres v. Rebarchak*, 814 F.2d 1219 (7th Cir. 1987). The Court in *Torres* held that a dismissal "without prejudice" is not an adjudication on the merits and therefore *res judicata* did not apply. *Id.* at 1224. That is not the case here.

3

statement is simply untrue. There is no continuing or recurring wrong present in this case.[3] The operative facts in both cases concern the peer review process and the filing of the NPDB report. Plaintiffs argument that the Release and Settlement Agreement concluding the state court case was "wrongfully extracted" (Resp., p. 6, citing Complt. ¶ 101.9), and thus a continuation of the alleged wrongs, has no merit. Indeed, that agreement was reached during the pendency of the state court litigation (a notice of appeal had been filed). Guerriero was represented by counsel during the entire peer review proceedings, state court case and the drafting and execution of the Release and Settlement Agreement. He chose not to appeal any aspect of the state court's final order, challenge the alleged "frivolous appeal" before it was dismissed pursuant to the Release and Settlement Agreement, or pursue any further peer review proceedings.[4] It is not unfair to prevent him from litigating before this Court the claims that he could have brought in the prior case. *Res judicata* bars his claims.

## II.   Federal And Illinois Statutory Immunities Bar Plaintiffs' Claims.

Plaintiffs claim that the Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. § 11101 *et seq*., does not provide immunity to Chorlé and Ellenberger and offer only conclusory support for that assertion by simply restating the allegations in the Complaint. (Resp., p. 11). Even under the Complaint's allegations, it is clear that Chorlé and Ellenberger were assisting LPH's professional peer review bodies and that their conduct falls within the purview of the statute.

---

[3] Plaintiffs' citation to the RESTATEMENT (SECOND) OF JUDGMENTS § 26(e)(1) as support for the argument that *res judicata* should not bar Plaintiffs' Complaint (Resp., p. 6) is inapposite. That section states: "For reasons of substantial policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit and chooses the latter course."

[4] Thus, Guerriero failed to exhaust his administrative remedies. (*See* Memo., p. 8 n.7). Plaintiffs argue that the presence of fraud excused his failure, but the Complaint does not adequately allege a fraud. Moreover, plaintiffs' argument that further peer review proceedings would have been futile and that "busy physicians…would have been piqued at having to waste more time on his case" (Resp., p. 8 n. 5), is mere speculation, and fails to address defendants' authority on the issue. Plaintiffs' reliance on *Canal v. Topinka*, 212 Ill. 2d 311 (2004) is misplaced. In that case, the court held that administrative remedies did not need to be exhausted because the issue in the case revolved around the constitutionality of a statute, which was not a matter more suitable for agency expertise.

Plaintiffs do not refute that the Illinois Hospital Licensing Act ("IHLA") and the Illinois Medical Practice Act of 1987 ("IMPA") grant immunity from civil damages for persons assisting in peer review proceedings, such as Chorlé and Ellenberger. Nor do plaintiffs distinguish the cases cited by defendants where claims similar to those here were dismissed based on those immunities. (Memo., pp. 11-12). Rather, plaintiffs state that the "willful and wanton" exception to the statutes applies here and again restate many of the Complaint's allegations. (Resp., pp. 9-11).

This simple restatement of allegations does not overcome the fact that neither Chorlé nor Ellenberger engaged in alleged conduct that constitute "a course of action that shows actual or deliberate intentional harm," the statutory definition of "willful and wanton" behavior. *See Lo v. Provena Covenant Medical Center*, 356 Ill. App. 3d 538, 545 (2005). In *Lo*, the court found that the defendant's conduct did not meet fit within the "specialized definition" of "willful and wanton misconduct" in the statute and dismissed his claims, even accepting plaintiff's allegations that the defendant violated its by-laws by reducing and restricting the plaintiff's medical staff privileges without granting him the right to a hearing, and that the defendant's CEO and President summarily suspended him without any recommendation by the department chair or any officer of the medical staff. *Id.* at 539-40. The Court stated: "Plaintiff has alleged no facts, and has offered no evidence, from which we could reasonably infer that defendant actually or deliberately intended to harm him. His own safety was never at issue in this case." *Id.* at 545 (citations and internal quotations omitted).

Here, plaintiffs argue that Chorlé and Ellenberger "went far beyond the bounds of proper legal advice and advocacy" (Resp., p. 10), but fail to sufficiently allege how any of their actions rose to the extreme level of "willful and wanton misconduct" in order to negate the protections given to them by the IHLA and the IMPA. The Complaint does not allege any facts from which the Court could reasonably infer that Chorlé and/or Ellenberger actually or deliberately intended to harm Guerriero simply by representing LPH in the peer review proceedings, or in defending LPH in the state court case brought by Guerriero.

Plaintiffs also argue that the IHLA does not apply because suspension is allowed only if "continuation of practice of a medical staff member poses an imminent danger to patients," and that, since the patient's surgery had ended, Guerriero could no longer pose a threat to her. (Resp., p. 11, citing 210 ILCS 85/10.4(b)(2)(C)(i)). But the fact that a specific threat to a

5

specific patient may have ended does not mean a physician cannot be suspended if there is an immediate danger of the physician performing surgeries for which he does not have privileges, which was the case here.

Plaintiffs' citation to *Matviuw v. Johnson*, 70 Ill. App. 3d 481 (1979) in support of their argument that the Illinois Medical Studies Act ("IMSA") privilege[5] should not apply in this case is misplaced. In that case, a defamation action, the court found the presence of ill-will and malice in a physician's alleged statements to a hospital committee that: he was unwilling to continue to work with plaintiff because of plaintiff's "dishonest and unethical practices;" the majority of plaintiff's colleagues had a very low opinion of the latter's abilities; he had warned several people regarding plaintiff's "shoddy practices;" and pediatricians' reports of "battered babies" prompted a departmental audit actions. *Id.* at 484. Plaintiffs' allegations concerning Chorlé and Ellenberger do not rise to this level.

### III. The Litigation Privilege Bars Plaintiffs' Claims.

Plaintiffs seek to avoid the application of the litigation privilege to Chorlé and Ellenberger's statements when they argue that it applies only to defamation claims. The "absolute litigation privilege affords immunity to attorneys (and other participants in the judicial process) from tort liability arising out of statements made in connection with litigation." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998). (*See also* Memo., pp. 12-13). Plaintiffs' claims against Chorlé and Ellenberger are based upon such allegedly false statements. Whether plaintiffs specifically allege these communications are "defamatory" or that they were false and used in the commission of some other tort – even an intentional tort – should not matter. The privilege should apply to those allegedly false communications. Absolute privilege "has been applied to virtually every common law tort, including but not limited to, malicious prosecution, tortious interference with business, false arrest, blackmail, fraud, intimidation, and invasion of privacy claims." *Geick v. Kay*, 236 Ill. App. 3d 868, 879 (1992) (applying privilege to government officials). As courts have stated: "If the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings is really to mean anything then we must not permit its circumvention by affording an almost

---

[5] Contrary to Plaintiffs' assertion, Chorlé and Ellenberger are not asserting the attorney client privilege in reference to all documents concerning the peer review process. (Resp., p. 10, n.7). The IMSA makes such documents privileged.

6

equally unrestricted action under a different label." *Barker v. Huang*, 610 A.2d 1341, 1349 (Del. 1992), quoting *Rainier's Dairies v. Raritan Valley Farms*, 117 A.2d 889, 895 (N.J. 1955). *See also Hoover v. Van Stone*, 540 F. Supp. 1118, 1120 (D. Del. 1982) (applying litigation privilege to non-defamation claims, including tortious interference with contractual relationships); *Loigman v. Township Comm. of Township of Middleton*, 889 A.2d 426, 436-37 (N.J. 2006)[6] (noting that, "to address creative pleading, courts have extended the litigation privilege to cover unconventional and sometimes novel causes of action against attorneys acting within the judicial process," including civil conspiracy, interference with contractual relations and fraud), citing *Absolute Immunity from Civil Liability: Lessons for Litigation Lawyers*, 31 PEPP. L. REV. 915, 928 (2004). Because the state law counts are predicated on the same acts of Chorlé and Ellenberger that would be immune if plaintiffs chose to plead a claim for defamation, the litigation privilege should bar those claims.

Plaintiffs' authorities in support of their argument that the litigation privilege is not applicable to fraud, tortious interference, or claims based on federal statutes[7] are inapposite.

*Matsuura v. E.I. Du Pont*, 73 P.3d 687 (Hawaii 2003) (applying Hawaii law) has no bearing on the outcome of this case. The better reasoned cases (*e.g., Barker*; *Loigman, supra*), stress that to allow artful pleading to circumvent the privilege defeats the purpose of the privilege in the first case. *Zdeb v. Baxter Intern, Inc.,* 297 Ill. App. 3d 622 (1998), does not make a blanket holding that the litigation privilege is not applicable to tortious interference claims. In *Zdeb*, the Court considered whether a tortious interference claim based on a letter written by a company's in-house counsel in anticipation of litigation was covered by the litigation privilege found in the RESTATEMENT (SECOND) OF TORTS § 586. The Court declined to apply the litigation privilege to a communication by a *client*, as opposed to communications by *attorneys*. *Id.* at 629. While the Court then remarked in *dicta* that Illinois courts have not extended the section 586 privilege to claims for intentional interference with prospective economic advantage, *id.*, the Court did not consider circumstances such as here, where the litigation privilege should apply to

---

[6] Plaintiffs' citation to *Loigman* does not support their point. (Resp., p. 15). Indeed, any argument that the tribunals in the peer review proceedings were somehow tainted is something Guerriero could have raised in those proceedings and in the state court action. That he did not only highlights why *res judicata* should bar him from litigating the issue before this Court.

[7] Chorlé and Ellenberger only argue that the Illinois litigation privilege bars plaintiffs' state law claims, not the RICO claims.

7

protect statements made by attorneys Chorlé and Ellenberger in the course of their representation of LPH in the peer review proceedings and state court proceedings. *Zdeb* is therefore distinguishable.[8] Applying the litigation privilege to all state-based causes of action here is consistent with the public policy underpinnings of the privilege.

Plaintiffs' argument that the privilege does not apply because the "Attorneys acted out of malice toward [Guerriero]" (Resp., p. 15) is meritless. The privilege grants immunity even if actions are taken with actual malice. (*See* Memo., p. 12). *Fisher v. Illinois Office Supply Co.*, 130 Ill. App. 3d 996 (1984), *Krasinski v. United Parcel Service*, 124 Ill. 2d 483 (1988), and *Matviuw v. Johnson*, 70 Ill. App. 3d 481 (1979), cited by plaintiffs, do not discuss the litigation privilege as applied to attorneys and are thus inapposite.

Plaintiffs further make the novel argument that somehow Chorlé and Ellenberger were actually Guerriero's attorneys who owed a fiduciary duty to him, and that a malpractice claim is implicit in the Complaint. (Resp., p. 13 & n.10).[9] The Complaint, however, clearly alleges that Chorlé and Ellenberger "represented other Defendants" in the peer review proceedings and the state court case. (Complt., ¶ 6(i)). In addition, the Notice of Appeal filed by LPH lists Ellenberger as one of its attorneys. (See LPH Defs.' Memo., Ex. F). Guerriero had his own counsel throughout the proceedings and never alleges that he even raised this "issue" at any time during the course of those proceedings. For plaintiffs to now suggest that Ellenberger and Chorlé were engaged as plaintiffs' lawyers is disingenuous and contrary to the allegations of the Complaint.

**IV.    Even If Plaintiffs' Claims Are Not Barred By *Res Judicata* Or Various Immunities, The Complaint Should Be Dismissed For Failure To State A Claim.**

    **A.    Count I (Fraud) Fails to State a Claim and Does Not Satisfy Rule 9(b).**

Plaintiffs cite *Havoco of America, Ltd. v. Hilco, Inc.*, 731 F.2d 1282 (7th Cir. 1984) in arguing that a plaintiff alleging fraud need not allege that any misrepresentations were made to him or her or that he or she reasonably relied upon those misrepresentations, but that misrepresentations and reliance by a third party are sufficient. The *Havoco* court, however, did

---

[8] *Conditioned Ocular Enhancement v. Bonaventura,* 458 F. Supp. 2d 704, 708 (N.D. Ill. 2006), which relies on *Zdeb* and is cited by plaintiffs, also does not address the issue at hand.

[9] Plaintiffs' citation to *Ferri v. Ackerman*, 444 U.S. 193 (1979) is misplaced – the Complaint does not contain a claim for legal malpractice or any allegations to support such a claim.

8

not cite any Illinois authority for its recognition of fraud in that case, nor did the court explain why it had "no difficulty in treating" the allegations in that case as a fraud claim. As defendants showed in their memorandum (Memo., pp. 14-15), Illinois case law requires otherwise. Plaintiffs have not provided any Illinois authority to support a state law claim for fraud or that "third party reliance" is an accepted theory of fraud under Illinois law.

Count I also fails to satisfy the requirements of Rule 9(b) to properly plead fraud, since the Complaint improperly "lumps" the individual defendants (including Chorlé and Ellenberger) together without specifically alleging what actions the individuals took that constituted a fraud. In their Response, Plaintiffs cite to paragraphs 43, 47, 52 and 57 of the Complaint as examples of fraud specifically alleged against Chorlé and Ellenberger. But paragraph 47 refers to report issued by the Hearing Committee (not Chorlé or Ellenberger); paragraph 52 describes a Memo "prepared by the Attorneys and approved by Drs, Markey, Munoz, Engel and Moritz;" and paragraph 54 quotes the NPDB Report that "LPH filed." None of these allegations allege any specific misrepresentations made by Chorlé or Ellenberger.

Plaintiffs admit that, except for the statements in paragraph 43, the statements are alleged to have been made by the Attorneys "collectively," but rely on *Petri v. Gatlin,* 997 F. Supp. 956, 973 (N.D. Ill. 1997), in arguing that "Rule 9(b)'s requirements may be relaxed when specific details are within the defendants' exclusive knowledge and control." But that does not allow a plaintiff to simply "infer" that the letter referred to in paragraph 43 (Exhibit D) "was written primarily by Ellenberger." (Resp., p. 17). None of the "collective" communications are alleged to even bear the name of Chorlé or Ellenberger. In particular, Exhibit D, which plaintiffs "infer" Ellenberger wrote, is not signed by her and her name appears nowhere on the exhibit. Such lumping and conclusory inferences of authorship do not meet Rule 9(b)'s requirements.

   **B. Count II (Tortious Interference with Bylaws) and Count III (Tortious Interference with LPH and Other Hospitals) Fail to State a Claim.**

Plaintiffs argue that the principle that agents (such as Chorlé and Ellenberger) cannot tortiously interfere with a contract in which their principal (LPH) is a party (which warrants dismissal of Counts II and III) does not apply because the "Individual Defendants were acting for selfish motives, not as agents of [LPH], but contrary to its interests…." (Resp., p. 18, citing Complt. ¶ 66). This conclusory allegation does not suffice and plaintiffs cite no authority to support their argument. Here, Chorlé and Ellenberger represented LPH during the peer review

9

proceedings and state court case, and clearly were acting as agents of, and at the direction of, their client.  Plaintiffs do not plead the alleged "selfish" motives of Chorlé and Ellenberger.  They argue that pursuing the peer review proceedings "inevitably led to larger fees for the Attorneys," (Resp., p. 20), but neither Chorlé nor Ellenberger initiated the peer review proceedings (LPH did), or filed the state court action (Guerriero did).  Neither Chorlé nor Ellenberger's alleged "conduct is totally unrelated or antagonistic to the principal's interests," especially where the existence of an attorney's fiduciary relationship with his or her client gives rise to a qualified privilege in favor of the attorney to advise the client without fear of personal liability to third persons if that advice later proves to be incorrect.  *Storm & Associates, Ltd. v. Cuculich,* 298 Ill. App. 3d 1040, 1051-53 (1998), citing *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill. 2d 145, 156-59 (1989), and *Salaymeh v. InterQual, Inc.,* 155 Ill. App. 3d 1040, 1045 (1987).

   Plaintiffs also argue that the qualified privilege to corporate officers, directors, shareholders and agents against claims that their activities interfered in a third party's relationships with their principals, (Memo., p. 17), does not apply because the defendants were acting with malice. (Resp., p. 18).  But no malice on the part of Chorlé and Ellenberger is alleged.  Chorlé and Ellenberger cannot be said to have any reason to have desired or benefited from the summary suspension and revocation of Guerriero's privileges at LPH.[10]  Here, as agents acting on behalf of LPH, Chorlé and Ellenberger are entitled to the qualified privilege, which defeats Counts II and III.

   Plaintiffs do not respond to Chorlé and Ellenberger's other arguments regarding dismissal of Count III (Memo., pp. 16-17), and even appear unsure whether it is actually a properly-named claim for interference with prospective economic advantage.  (Resp., p. 21 n.15).  That Count should be dismissed for these additional reasons.

---

[10] *Fisher v. Illinois Office Supply Co.*, 130 Ill. App. 3d 996 (1984), cited by plaintiffs, does not discuss whether the alleged statement at issue in that case actually met the standard for malice.

10

### D.  Count IV (Denial of Illinois Common Law Right to a Fair Hearing) Fails to State a Claim.

Plaintiffs do not cite any authority that shows a separate claim seeking damages for "Denial of Illinois Common Law Right to a Fair Hearing" can be maintained here.[11]  To the extent Illinois law provides a right to judicial review of peer review proceedings, Guerriero already brought such an action in the Chancery Court.

Plaintiffs do not respond to defendants' arguments that the by-laws themselves are not challenged as failing to provide a right to a fair hearing, and fail to respond to defendants' authority that, because that is the case here, Count IV should be stricken.  (Memo., p. 18, citing *Head v. Lutheran Gen. Hosp.*, 163 Ill. App. 3d 682, 694 (1987)).

### E.  Count V (Civil Conspiracy) Fails to State a Claim.

Plaintiffs fail to respond to defendants' cited authority that demonstrates that, as a matter of law, a conspiracy cannot exists between a principal (here, LPH) and its agents (including Chorlé and Ellenberger).  (Memo., pp. 19-20).  Plaintiffs' argument that there was no agency relationship has no merit for the reasons set forth *supra*, pp. 9-10.

Moreover, the Complaint does not contain allegations that rise above a mere characterization of a combination of acts as a conspiracy, and does not contain specific allegations that Chorlé and Ellenberger knowingly participated in a conspiracy.  Plaintiffs seemingly admit this when they argue that direct proof is not required because conspiracies "are purposely shrouded in mystery." (Resp., p. 23).  Yet, *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988), cited by plaintiffs, requires that "to be liable as a conspirator you must be a voluntary participant…and agree…to do your part to further [the general objectives of the conspiracy]." (Resp., p. 25).  Here, no agreement by Chorlé and Ellenberger to participate in an alleged conspiracy to "get rid of Guerriero" (id., p. 24) is alleged.

---

[11]  None of the authorities cited by plaintiffs regarding medical peer review proceedings provides for an independent cause of action for the denial of the common law right to a fair hearing.  In *Van Daele v. Vinci*, 51 Ill. 2d 389 (1972), an injunction action, the court judged that a private association's (not a hospital) administrative decision could not stand where actual bias on the part of the members of the review commission was observed.  The Illinois Supreme Court in *Adkins v. Sarah Bush Lincoln Health Center*, 129 Ill. 2d 497, 510 (1989), specifically distinguished *Van Daele* on those grounds.

11

**F.      Count VI (Aiding and Abetting by Attorneys) Fails to State a Claim.**

Count VI, brought against Chorlé and Ellenberger for "Aiding and Abetting by Attorneys," (Complt., ¶¶ 94-98), does not identify which specific torts Chorlé and Ellenberger allegedly aided and abetted. Simply pointing to a host of other allegations and expecting defendants to glean what conduct was aided and abetted fails basic pleading requirements. Plaintiffs' citation to *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15 (2003) and *Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006) provides no support, since in those cases the plaintiffs had properly pled the existence of underlying torts that the defendant attorneys allegedly aided and abetted. That is not the case here, where Counts I through V fail to state a claim for any of the alleged torts (*see* arguments, *supra*, and arguments by other defendants).

**G.      Count VII (Civil RICO, 18 U.S.C. § 1962(c)) Fails to State a Claim.**

      **1.      No RICO Enterprise is Alleged.**

Plaintiffs argue that three of the "at least four enterprises" (Complt., ¶ 113) alleged in the Complaint existed before the scheme to defraud Guerriero and that they exist today. (Resp., p. 27). Plaintiffs fail, however, to respond to defendants' argument (and cited authorities) that this alleged collection of enterprises, including the fourth alleged enterprise of an association-in-fact consisting solely of the individual defendants, does not have a separate structure or common thread among the defendants other than through the alleged "racketeering" activities. (*See* Memo., pp. 20-22). This collection of enterprises (apparently acting in concert) was used solely to accomplish the alleged goal of the RICO conspiracy, *i.e.* to "get rid of Guerriero." But this just means that the enterprise is defined by nothing more than the racketeering acts, which means it is no enterprise at all.

Plaintiffs also do not respond to Chorlé and Ellenberger's argument that there are no facts alleged that support a claim that the various associates will function as a continuing unit on an ongoing basis, and that there is no common purpose of the enterprise as a whole (*See* Memo., pp. 21-22). A plaintiff must allege these aspects to plead a valid RICO enterprise. The Complaint, however, does not do this.

      **2.      A Pattern of Racketeering Activity is not Alleged.**

Plaintiffs' assertion that "[t]here was a pattern in this case because each enterprise had one goal: to get rid of Guerriero" (Resp., p. 28)," does nothing to counter defendants' argument and authority that a single scheme with few victims does not satisfy the pattern requirement.

(Memo., pp. 23-27). In fact, plaintiffs do not even attempt to distinguish defendants' caselaw or counter defendants' argument that the relationship prong of the "continuity plus relationship" test is not met.

Plaintiffs argue that the continuity requirement is met by stating that "Defendants' wrongs continue to plague Plaintiffs;" that LPH (only one of the four alleged enterprises) has a regular way of doing business of misusing the peer review process to eliminate a physician from staff, and that there are "industry-wide reasons" to expect similar misconduct in the future. (Resp., pp. 28-29). Yet, the alleged racketeering scheme to "get rid of Guerriero" has already been accomplished and any other alleged improper conduct against other doctors (none of which involved either Chorlé or Ellenberger) concluded years ago. (*See* Memo., p. 26). No facts are alleged that show a *specific* threat of *future* criminal misconduct by the supposed collective Enterprise (or single enterprises), or by Chorlé and Ellenberger in particular. Plaintiffs' reliance on supposed industry-wide practices does not make such a showing.

### 3. The Predicate Acts are not Alleged with Particularity.

Plaintiffs' response to defendants' arguments that the Complaint fails to sufficiently allege that either Chorlé or Ellenberger committed two predicate acts upon which a RICO claim must be based is simply to state that: "Mailing false letters concerning a peer review case to further a scheme to defraud is 'mail fraud,'" citing *Wasserman v. Maimonides Medical Center,* 970 F. Supp. 183 (E.D.N.Y. 1997), and that "threatening to destroy a physician's career with a peer review is 'extortion,'" citing *Chinnici v. Central DuPage Hospital,* No. 89 C 07752, 1990 WL 103606 (N.D. Ill. July 3, 1990). (Resp., p. 29).

But the mail fraud allegations cannot be predicate acts against Chorlé or Ellenberger because they do not pass muster under Rule 9(b). In *Wasserman*, the Court dismissed RICO claims precisely because they did not meet the federal pleading requirements, including those under Rule 9(b). And no predicate acts of extortion are alleged against either Chorlé or Ellenberger because the Complaint does not allege what "threats" were made by either Chorlé or Ellenberger, or what either of them actually extorted from Guerriero. Unlike in *Chinnici*, where the defendants allegedly made threats to force the plaintiff's partner to join them in an illegal boycott that violated anti-trust laws, neither Chorlé nor Ellenberger are alleged to have conditioned Guerriero's retention of his privileges on an agreement to commit an illegal act.

13

      **H.    Count VIII (RICO Conspiracy) Fails to State a Claim.**

Plaintiffs' response simply incorporates the Complaint's allegations regarding the underlying RICO and conspiracy claims. Because, as shown *supra* (pp. 11-13) and in Defendants' opening memoranda (Memo., pp. 18-29), those claims fail, so too does the RICO conspiracy claim (Count VIII).

**IV.    Count IX (Claims By Dr. Nacopoulos) Should Be Dismissed.**

Plaintiffs' response does not address the arguments by Defendants that Count IX should be dismissed. For the reasons previously stated, Count IX should be dismissed.

Chorlé and Ellenberger also adopt and incorporate the arguments of the other defendants, which support dismissal of the Complaint.

## CONCLUSION

WHEREFORE, for the reasons stated above and in their supporting memorandum, Defendants Erhard Chorlé and Lynn Ellenberger respectfully request that this Court dismiss the Complaint with prejudice as to them.

                                    Respectfully submitted,

                                      /s/Kevin M. Forde_____
                                      One of the Attorneys for Defendants
                                      Erhard R. Chorlé and Lynn A. Ellenberger

Kevin M. Forde
Kevin R. Malloy
Melissa G. Lafferty
Kevin M. Forde, Ltd.
111 West Washington Street
Suite 1100
Chicago, IL  60602
(312) 641-1441